United States District Court
Southern District of Texas
**ENTERED**
September 17, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BENEKA JENKINS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-01840 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Beneka Jenkins ("Jenkins") seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Jenkins and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 14–15. After reviewing the briefing, the record, and the applicable law, Jenkins's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**.

## BACKGROUND

Jenkins filed an application for supplemental security income under the Act on May 18, 2017, alleging disability beginning on January 1, 2008. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Jenkins was not disabled. Jenkins filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Jenkins had not engaged in substantial gainful activity "since May 18, 2017, the application date." Dkt. 8-3 at 20.

The ALJ found at Step 2 that Jenkins suffered from "the following severe impairments: major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning, and learning disorder." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Jenkins's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, repetitive, 1-2-3 step tasks. The claimant is further limited to no more than occasional interactions with the public. The work should be undertaken at a non-forced pace. The claimant must not be required to read for meaning; rather, reading is limited to simple word recognition. The claimant should also never be required to engage in mathematics beyond double addition and subtraction.

*Id.* at 23.

At Step 4, the ALJ found that Jenkins had no past relevant work. And, at Step 5, the ALJ concluded that there are jobs that exist "in significant numbers in the national economy that [Jenkins] can perform." *Id.* at 28.

## DISCUSSION

Jenkins first attacks the ALJ's step two determination, arguing that the ALJ committed a *Stone* error and failed to recognize her hearing loss and back impairment (slight scoliosis) as severe. Next, Jenkins argues that the ALJ erred at step three by finding that she does not meet the requirements of Listing 12.05. I disagree.

**A.** ***STONE,* SEVERE IMPAIRMENTS, & HARMLESS ERROR**

At step two, the ALJ must determine whether the claimant's impairments are severe. In *Stone v. Heckler*, the Fifth Circuit held that an impairment is not considered severe if "it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (cleaned up). Put another way, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Salmond*, 892 F.3d at 817 (quoting *Stone*, 752 F.2d at 1101). The ALJ and Appeals Council are presumed to have applied the incorrect standard for determining whether an impairment is severe "unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect." *Stone*, 752 F.2d at 1106.

In this case, the ALJ failed to reference the *Stone* standard or another Fifth Circuit case to that effect. Instead, the ALJ stated that "[a]n impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." Dkt. 8-3 at 20. The ALJ further observed that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight

4

abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.* at 21. "These statements do not properly set forth the applicable severity standard." *Ektefaei v. Saul*, No. 3:19-CV-00409, 2020 WL 9601991, at *3 (S.D. Tex. Nov. 16, 2020) (collecting cases).

Having concluded that the ALJ erred at step two by applying the incorrect legal standard, I must now determine whether that error was harmless. *See Murphy v. Berryhill*, No. 3:17-CV-01260-M-BH, 2018 WL 4568808, at *14 (N.D. Tex. Sept. 24, 2018) (A "*Stone* error does not mandate automatic reversal and remand . . . where the ALJ proceeds past step two in the sequential evaluation process" unless the error prejudiced the claimant). "A step two error is harmless if the ALJ proceeds beyond step two and gives proper consideration to both the severe and non-severe impairments in the remaining steps." *Ardoin v. Saul*, No. 4:19-CV-02022, 2020 WL 2934814, at *3 (S.D. Tex. June 3, 2020). *See also Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Here, the ALJ proceeded beyond Step 2. Nevertheless, Jenkins argues that the ALJ's *Stone* error was not harmless because the ALJ failed to recognize her hearing loss and back impairment (slight scoliosis) as severe.

In assessing Jenkins's RFC, the ALJ specifically discussed her recognized severe and non-severe impairments. The ALJ even discussed Jenkins's purported hearing loss and slight scoliosis. Regarding the hearing loss, the ALJ noted that a "2013 hearing test showed evidence of sensorineural hearing loss" and "an auditory discrimination impairment." Dkt. 8-3 at 25. However, the ALJ went on to find that Jenkins never followed up with an ear, nose, and throat specialist regarding her hearing loss and the record did not contain any evidence that Jenkins required hearing aids. *See id.* Later, the ALJ relied on the testimony of a

state agency medical consultant who opined that Jenkins did not have a severe hearing impairment. *See id.* at 27. Similarly, the ALJ recognized that "a 2013 lumbar spine study showed evidence of slight levoscoliosis of the lumbar spine," but noted that "in her adult function report, [Jenkins] did not indicate any difficulty with lifting, squatting, bending, standing, reaching, walking, stair climbing, kneeling or sitting." *Id.* at 25.

In sum, although the ALJ applied an erroneous standard at step two, he still considered the effects of hearing loss and slight scoliosis on Jenkins's ability to perform work-related activities. Because the ALJ considered the limiting effects of Jenkins's recognized non-severe impairments, it is inconceivable he would have reached a different conclusion had he classified the same impairments as severe at step two. Therefore, the ALJ's application of the incorrect standard at step two constitutes harmless error. *See Ardoin*, 2020 WL 2934814, at *4.

**B.   LISTING 12.05**

At step three of the sequential analysis the ALJ must determine whether a claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Part 404, Subpt. P, App'x 1. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis omitted). If a claimant meets this burden, she is disabled.

At issue here is Listing 12.05: Intellectual disorder. Listing 12.05 is satisfied by meeting the three requirements of either paragraph A or B. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05. The ALJ determined that Jenkins did not satisfy the second requirement of paragraphs A and B, and substantial evidence supports his determination.

6

Under paragraph A of Listing 12.05, among other requirements, Jenkins must establish "[s]ignificant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing)." *Id.* Similarly, under paragraph B of Listing 12.05, among other requirements, Jenkins must establish "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two," of four delineated areas of mental functioning: "[u]nderstand, remember, or apply information"; "[i]nteract with others"; "[c]oncentrate, persist, or maintain pace"; or" [a]dapt or manage oneself." *Id.* The ALJ found no evidence to support either requirement, explaining as follows:

> The undersigned considered whether claimant's severe impairments meets or equals the criteria of listing 12.05, *Intellectual disorder*. However, the undersigned found no evidence of: Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); nor did the evidence find evidence of significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: a. Understand, remember, or apply information (see 12.00E1); b. Interact with others (see 12.00E2); c. Concentrate, persist, or maintain pace (see 12.00E3); d. Adapt or manage oneself (see 12.00E4).

Dkt. 8-3 at 22. In addition to this brief explanation, in considering the applicability of Listings 12.04, 12.06, and 12.11 (which are not at issue in this appeal), the ALJ described in detail, referencing various medical records, that Jenkins was only moderately limited in the four delineated areas of mental functioning. *See id.* at 21–22. In other words, the ALJ thoroughly explained his determination that Jenkins does not satisfy the requirements of Listing 12.05.

Jenkins does not argue that the ALJ failed to analyze the requirements of Listing 12.05. Instead, Jenkins disputes the ALJ's determination that she was only moderately limited in the relevant functional areas. As succinctly explained by Jenkins:

> Plaintiff contends that the above evidence, including numerous psychological examinations and test results, indicate that Plaintiff has at least a "marked," if not an "extreme" limitation in the domains of concentrating, persisting and maintaining pace, and understanding,

7

remembering or applying information. Hence, Plaintiff's mental impairments are of listing level severity.

Dkt. 14 at 11. Boiled down, Jenkins asks me to reweigh the evidence. This I cannot do.

As I have previously explained, I "may not reweigh the evidence, try the questions *de novo*, or substitute [my] judgment for the Commissioner's, even if [I] believe[] the evidence weighs against the Commissioner's decision" because "conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Armstrong v. Saul*, No. 3:19-CV-00137, 2020 WL 410197, at *2 (S.D. Tex. Jan. 21, 2020) (quotation omitted). Accordingly, I must uphold the ALJ's determination that Jenkins failed to satisfy Listing 12.05.

## CONCLUSION

For the reasons provided above, Jenkins's motion for summary judgment is **DENIED**, and the Commissioner's motion for summary judgment is **GRANTED**. An entry of final judgment will be separately entered.

SIGNED this 17 day of September 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE